James CHAMBERS and Lydia Chambers, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18021.

United States Court of Appeals Eighth Circuit.

March 3, 1966.

---

Paul C. Zempel, St. Louis, Mo., for appellants.

Harold F. Reis, Executive Asst. to Atty. Gen., Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Dept. of Justice, Morton Hollander and Robert V. Zener, Attor-

neys, Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.

MEHAFFY, Circuit Judge.

Plaintiffs James and Lydia Chambers brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq., seeking damages for the death of their son, Airman Third Class John E. Chambers.

The complaint alleged that on the date of his death, decedent was an enlisted man in the United States Air Force assigned to Whiteman Air Force Base in Johnson County, Missouri; that the United States maintained and operated a base swimming pool for its personnel; and that while swimming in the base pool on August 17, 1963, decedent drowned or died of a blow on the head, or a combination of both.

The Government filed a pleading entitled "Answer and/or Motion to Dismiss with Suggestions in Support," admitting that the Government was engaged in maintaining and training military personnel and in connection therewith maintained and operated the Whiteman Air Force Base, including the base swimming pool. The Government further admitted that on the date of his death, decedent was an enlisted man assigned to Whiteman Air Force Base and that on August 17, 1963, while engaged in swimming in said pool, he drowned. The Government denied that decedent received a blow on his head.

Plaintiffs alleged numerous acts of negligence, including failure to keep qualified life guards at the pool, failure to provide adequate life saving equipment, failure to instruct life guards properly in life saving methods, and in general failure to provide adequate protection for decedent while he was swimming in said pool.

The Government denied all the allegations of negligence and moved to dismiss the complaint on the grounds that plaintiffs had no claim under the Tort Claims Act.

The trial court dismissed the Government's motion without prejudice because at that juncture it did not appear from the pleadings whether or not the decedent's activities at the time of his death were incident to his military service.

Subsequently, the Government resubmitted its motion to dismiss attaching in affidavit form a statement of an Assistant United States Attorney based upon information furnished to him by other government agents, asserting that decedent was considered a capable swimmer who was training for underwater swimming activities in an intersquadron swimming meet, and that he was known to practice physical endurance in underwater swimming by using a method of breathing called "hyperventilation." The decedent was considered as being present and accounted for and subject to the command of the base authorities. He was not in furlough status. Also submitted was the certificate of Colonel R. J. Pugh, Director of Administrative Services of the Air Force and official custodian of the records of Air Force personnel, avowing that the records disclose that decedent was an enlisted man on continuous active service in the Air Force until his death on August 17, 1963. Additionally, the Government submitted the affidavit of First Lieutenant Hirum E. West, acting commander of decedent's squadron, to the effect that decedent was present and accounted for on the day of his death, and that decedent was immediately subject to the command of affiant and other of his military superiors while on the base, including that time decedent was in the base pool immediately preceding his death.

The trial court, in a memorandum and order sustaining defendant's motion, noted:

> "From August 27, 1964 to November 27, 1964, plaintiffs sought and obtained various extensions of time to respond with suggestions in opposition to defendant's renewed Mo-

tion to Dismiss. The time granted in the last continuing order has now expired, and the plaintiffs still have not responded. We can only conclude that plaintiffs are unable to state controverting facts, or a tenable theory of law to rebut the defendant's motion and its supporting affidavits."

The trial court concluded that the uncontroverted affidavit established that, at the time of his death, decedent was on active duty status with the United States Air Force and subject to commands of his military superiors; that decedent's swimming activity was performed while on active duty, and sufficiently related to military service to preclude an action under the Federal Tort Claims Act. The trial court considered defendant's motion as a motion for summary judgment and sustained it. We affirm.

The sole issue here is whether the District Court was warranted, after considering the record before it, in dismissing plaintiffs' complaint and entering summary judgment for the Government under Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs have challenged the documents filed by the Government in support of its motion. We will ignore them in our initial discussion because we think the Government would have been entitled to summary judgment in this case even if no affidavit or supporting evidence had been offered in support of its motion.

The Supreme Court in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), held that "[t]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are incident to service." *Feres* also established that a serviceman cannot recover for injuries incident to service even though at the time he is not engaged in the performance of military duties.[1] The complaint in the instant case does not allege or even suggest any fact that would take it outside the *Feres* rule and permit recovery.

We have consistently held that summary judgment is appropriate where, had the case gone to trial, a directed verdict would have been required. Wolf v. Schaben, 272 F.2d 737 (8th Cir. 1959); Rubenstein v. Dr. Pepper Co., 228 F.2d 528, 532–533 (8th Cir. 1955); Durasteel v. Great Lakes Steel Corp., 205 F.2d 438, 441 (8th Cir. 1953).

It is not necessary for the defending party to support his motion for summary judgment by affidavits. Rule 56(b) Fed.R.Civ.P.

The purpose of our summary judgment rule is to expeditiously determine cases without necessity for formal trial where there is no substantial issue of fact and is in the nature of an inquiry to determine whether genuine issues of fact exist. If no factual dispute exists and the complaint does not state a cause of action, it should be disposed of by summary judgment rather than exposing the litigants to unnecessary delay, work and expense in going to trial when the trial judge would be bound to direct a verdict in movant's favor after all evidence is adduced.

Plaintiffs allege that Airman Chambers met his death while in service at the Whiteman Air Force Base when engaged in swimming in a pool that was a part of said base due to the alleged negligence of the Government. These facts do not constitute a cause of action under the *Feres* rule.

The *Feres* case has been consistently followed. In United States v. United Services Auto. Ass'n., 238 F.2d 364 (8th Cir. 1956), this court, speaking through Judge Van Oosterhout, discusses *Feres* at length and the reasons the Supreme Court there assigned for denying a serv-

1. The Supreme Court in *Feres* considered three cases in the one opinion. *Feres* perished by fire while asleep in his barracks; the other two cases, *Jefferson* and *Griggs*, involved negligent treatment while the servicemen were in Army hospitals. The Supreme Court denied recovery in each of the three cases.

iceman relief under the Tort Claims Act. Judge Van Oosterhout noted there that *Feres* was decided by a unanimous court and its rule had been steadfastly adhered to.

The statement of the Assistant United State Attorney, based as it is upon information furnished by others, obviously does not comply with Rule 56 (e) and does not constitute admissible evidence. It is, therefore, not entitled to and will be given no consideration here. Hoston v. J. R. Watkins Co., 300 F.2d 869, 870 (9th Cir. 1962).

The certificate of Colonel R. J. Pugh to the effect that Air Force personnel records indicated that Airman Chambers was an enlisted man and in active service until his death need not be considered as there is other evidence to the same effect in the pleadings as well as in the affidavit of Lieutenant West.

Plaintiffs admit that the affidavit of Lieutenant West was in proper form and that in the Government's second motion it was alleged that Airman Chambers died in the swimming pool "while engaged in activities which were incident to his military service." The plaintiffs challenge this affidavit, asserting that it is devoted entirely to legal and factual conclusions not based on personal knowledge and thus failing the requirement of Rule 56(c).[2] It is true the affidavit does not state, in so many words, that it is based on personal knowledge, but all pertinent parts obviously were made from personal knowledge. Certainly Lieutenant West knew that he was Acting Commander of the squadron to which Airman Chambers was assigned on the date of his death and that on said date Airman Chambers was subject to his command as well as to that of all his military superiors, and that this subjection to control of his military superiors applied to Airman Chambers' presence in the swimming pool in which he was drowned. Lieutenant West did not state that he had personal knowledge of Chambers' presence on the base that day, but rather used the militaryese language "on the date of 17 August 1963 the said Airman Third Class John Edward Chambers was accounted for by the United States *Air Force as being present for* duty." This statement, of which plaintiffs complain, is not significant because the complaint alleges and the answer admits that Airman Chambers met his death while swimming in the pool on August 17, 1963. We note that plaintiffs made no objection to the affidavit of Lieutenant West, or the other documents for that matter, and no motion was made to strike any of them. Under these circumstances, neither this court nor the trial court is precluded from giving the documents consideration. United States for Use and Benefit of Austin v. Western Electric Co., 337 F.2d 568, 575 (9th Cir. 1964).[3]

2. "Hirum E. West, First Lieutenant, USAF, 351 Civil Engineering Squadron, United States Air Force, Whiteman Air Force Base, Missouri, being duly sworn, deposes and states as follows:

"On 17 August 1963 I was Acting Commander of the 340th Civil Engineering Squadron, which has been since redesignated 351st Civil Engineering Squadron, Whiteman Air Force Base, Missouri. On that date John Edward Chambers was assigned as an Airman Third Class, United States Air Force, to the 340th Civil Engineering Squadron, Whiteman Air Force Base, Missouri. On the date of 17 August 1963 the said Airman Third Class John Edward Chambers was accounted for by the United States Air Force as being present for duty. Further, while being on Whiteman Air Force Base on 17 August 1963 he was immediately subject to my command as well as to that of all his military superiors. This subjection to the control of his military superiors applied to the said Airman Third Class John Edward Chambers' presence in the swimming pool in which he drowned as it was within the limits of Whiteman Air Force Base, Missouri * * *."

3. The *Western Electric* opinion in footnote 19, 337 F.2d at 575 quotes from Barron and Holtzoff:

"The rule here applicable was stated in 3 Barron and Holtzoff, Federal Practice and Procedure 171: 'An affidavit which fails to meet the requirements of Rule 56(e) may be stricken on motion.

Plaintiffs assert that even if the disputed documents were considered they "[a]t most state that Chambers was on active duty at the time of his death. They do not negate the possibility that he was on furlough or weekend liberty at the time of his death." It is not incumbent upon the defendant to negate any possibility not alleged in the complaint. Even if plaintiffs had available such proof, the existence of same would not be effective to raise a fact issue under the *Feres* rule.

In Zoula v. United States, 217 F.2d 81 (5th Cir. 1954), servicemen were injured in a collision between the automobile they occupied and an Army ambulance. The servicemen had passes but recovery under the Federal Tort Claims Act was denied them.

> "At the time of the collision resulting in the injuries sued for, both the Plaintiffs were dressed in civilian clothes, were on business of their own, going from one part of the Reservation to the other, for the purpose of getting a check cashed, a hair-cut, making measurements for some clothes, probably spending the week end [sic] in town." Id. at 82 n. 1.[4]

See also Gursley v. United States, 232 F.Supp. 614 (D.C.Colo.1964); Richardson v. United States, 226 F.Supp. 49 (E.D.Va.1964).

In United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), in discussing *Feres*, the Court said:

> "The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character."

The significant fact here is that Chambers was assigned to duty at the Whiteman Base, subject to the control of his military superiors. Even though he might have had a furlough order in his pocket or might have been engaged in swimming for recreation, his claim would be subject to the *Feres* rule and no recovery permitted. As a matter of fact, Airman Chambers' use of the pool, which was a part of the base, was related to and dependent upon his military service; otherwise, he would not have been privileged to use it.

Plaintiffs neither objected to nor moved to strike any of the supporting documents filed with the Government's resubmitted motion to dismiss. We think it is too late for plaintiffs to urge their objections for the first time in this court, having had ample opportunity to do so in the trial court. Had they made the same objections in the trial court, it would have afforded the Government an opportunity to correct any technical defects. In order for plaintiffs to successfully oppose the Government's motion, they were obliged to come forward with either a denial of the allegations or evidence to show a factual conflict. United States v. Mt. Vernon Milling Co., 345 F.2d 404 (7th Cir. 1965). And, where a party has no countervailing evidence and cannot show any will be available at trial, he is not entitled to a denial of the motion. International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.2d 165, 169, n. 5 (9th Cir. 1964). Furthermore, plaintiffs failed to make an issue of fact by arguing in this court that Airman Chambers might have been on furlough or weekend liberty. Atex Mfg. Co. v.

In the absence of a motion to strike or other objection the court may properly choose to consider a document which technically fails to conform to the rule.' "

4. The servicemen there had passes issued to them and since the injury happened on the base and while they were thus subject to military control, their activities were "incident to service" within the meaning of the *Feres* rule.

**230**

"Lloyds of London," 139 F.Supp. 314 (W.D.Ark.1955).

We, therefore, hold that plaintiffs' failure to state a cause of action under the *Feres* rule was sufficient to warrant the trial court's entry of summary judgment. The trial court had a right to consider the affidavit of Lieutenant West in arriving at its decision, despite the affidavit's omission of stating that it was made on personal knowledge. The judgment of the District Court granting summary judgment to the Goverment is affirmed.