**Sharon M. JOHNSON,
Plaintiff-Appellant,**

v.

**Officer J. MILLER, Officer Bruce Sutcliff and First National Bank of Chicago, Defendants-Appellees.**

No. 81–2486.

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1982.

Decided June 7, 1982.

Frederic M. Ellis, Jr., Chicago, Ill., for appellant.

Michael J. Gallagher, Cassiday, Schade & Gloor, Dorothy F. French, French & Rogers, Mildred F. Haggerty, Dejong, Poltrock & Giampietro, Chicago, Ill., for appellee.

Before BAUER, Circuit Judge, GIBSON,* Senior Circuit Judge, and POSNER, Circuit Judge.

POSNER, Circuit Judge.

This is an appeal from an order of the district court dismissing, for failure to state a claim upon which relief can be granted, see Fed.R.Civ.P. 12(b)(6), Sharon Johnson's complaint, based on 42 U.S.C. § 1983, against two Illinois police officers, Miller and Sutcliff, and the First National Bank of Chicago.

The complaint alleges that someone named Anette Jenkins used Miss Johnson's name and her savings account at the First National Bank to defraud the bank. The bank caught Jenkins, and though it knew or should have known that she was not Miss Johnson filed a criminal complaint against Miss Johnson and gave her address to the police. A warrant for her arrest was issued, and on December 18, 1980, officer Miller came to her home and arrested her. The warrant was in Miss Johnson's name but the description on the warrant was of a black female, five foot seven and weighing 172 pounds, born February 5, 1951, and Miss Johnson is a five-foot-five white, born May 2, 1951. She was taken to the police station and detained there for two and a half hours, fingerprinted, charged with the criminal offense of deceptive practices, and forced to post bond to gain her freedom.

A preliminary hearing was held on January 12, 1981, at which Miss Johnson told the judge that she was the wrong person and the judge entered an order stating, "wrong defendant warrant to reissue." Although Miss Johnson had informed the First National Bank several days before the hearing that she had been falsely arrested, the bank neither appeared at the January 12 hearing nor withdrew its criminal complaint against her.

The warrant was reissued. The new warrant was identical to the old except that it showed Miss Johnson's correct birthdate. Officer Sutcliff, though he had knowledge of the previous service of the warrant on Miss Johnson, came to her house and arrested her, and she was put through the same routine at the police station as before. A second preliminary hearing was held on February 18, 1981, at which she was again discharged. As a result of all this Miss Johnson has incurred legal expenses, a loss of wages, and humiliation.

The question is whether these facts, if true (at this stage they are, of course, only allegations), state a claim under 42 U.S.C. § 1983 against any of the defendants. Clearly they do not against the bank, because it was not acting under color of state law. To file a criminal complaint with the police is the act of a private citizen. To fail to withdraw the complaint when the complainant finds out that it is groundless is reprehensible and may well violate state tort law but it does not alter the private character of the complainant. No conspiracy between the bank and the officers is alleged; and while the plaintiff's appeal brief states that the complaint alleges "the consort of action necessary to bring a private entity under the purview of" section 1983, in fact no "consort" is alleged beyond the filing of the original complaint

---

* Of the Eighth Circuit.

and the failure to withdraw it. If that is enough to bring the bank within the reach of section 1983, the statute potentially covers all private dealings with the police.

The plaintiff argues that even if the bank's conduct is not actionable under section 1983, the claim against the bank should be retained in federal court under the doctrines of pendent or ancillary jurisdiction. We need not decide what if anything survives of pendent party jurisdiction in this circuit after *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1007–09 (7th Cir. 1982) (*Hixon* was a diversity, this is a federal-question, case). Since the complaint fails to allege that the bank violated state law, there is no pendent or ancillary state law claim.

The difficult issue in the case is whether the complaint states a claim against one or both of the arresting officers. We begin with officer Miller, who arrested Miss Johnson the first time.

■ If an arrest warrant is valid on its face, its execution against the person named in the warrant does not violate the Fourth Amendment even if, because someone has made a mistake, the person named in the warrant is not the person whom the authorities intended to arrest. See *Baker v. McCollan*, 443 U.S. 137, 143–44, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) (dictum); *Johnson v. City of St. Paul*, 634 F.2d 1146 (8th Cir. 1980); *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). This case, however, is distinguishable because of the discrepancy between the description in the warrant and the appearance of the person named in the warrant and arrested by the officer executing it. We have to decide whether such a discrepancy shows, at least prima facie, that the arresting officer violated the arrested person's constitutional rights.

■ We think not. Section 1983 is a tort statute. It punishes wrongful conduct. There is no allegation that Miller intentionally or even negligently, or otherwise wrongfully, deprived Miss Johnson of her liberty or property, and we will not infer wrongfulness from a mere discrepancy in the description. Those responsible for the discrepancy may be liable, see *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981), but they are not defendants in this case. We do not think the arresting officer, Miller, can be said to have acted wrongfully merely because the warrant he executed contained a description that did not match the appearance of Miss Johnson. For Miller the main thing was that the name was right. The purpose of the description was to help him, as the arresting officer, identify her and he needed no help since she acknowledged that she was the person named in the warrant. If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions.

A more difficult issue is presented by the second arrest. Someone must have been negligent in reissuing the warrant in Miss Johnson's name, though not necessarily officer Sutcliff, who merely executed it. But the complaint alleges that Sutcliff had knowledge of the previous service of the (almost identical) warrant, and while this is awfully vague, it may be an attempt to allege that Sutcliff had reason to know that the warrant had been issued mistakenly and that he therefore was negligent in executing it without first checking back with his superiors. Even so, we conclude, there would be no violation of the Fourth Amendment by Sutcliff.

We resist the temptation to reach this conclusion by the casuistic route of deeming a warrant to be valid on its face even if it contains discrepancies (such as the misspelling of the arrested person's name in *Atkins v. Lanning*, 556 F.2d 485, 487 (10th Cir. 1977)) and then invoking the proposition that the execution of a valid warrant against the person named in it does not violate the Fourth Amendment even if the warrant was issued by mistake. We place

our decision on a more practical ground. The execution of a warrant by an officer who if he were more careful might have noticed that the warrant had been issued by mistake is not the stuff out of which a proper federal case is made. The Fourth Amendment and section 1983 have higher objects in view than getting arresting officers to backstop the mistakes of their superiors. Cf. *Smith v. Gonzales, supra*, 670 F.2d at 526. This lawsuit under section 1983 duplicates, as the plaintiff's counsel acknowledged at the oral argument of this appeal, state tort remedies for false arrest, false imprisonment, invasion of privacy, defamation, and negligence. The conduct alleged in the complaint is outrageous, but it is also fully actionable under state law. It is not actionable under section 1983; the contrary suggestion in *Williams v. City of Chicago*, 525 F.Supp. 85 (N.D.Ill.1981), is disapproved.

This is not to say that police officers can run amok, without fearing liability under section 1983, so long as they have a piece of paper in their hands called an arrest warrant. If the complaint in this case had alleged that Miller or Sutcliff had procured a warrant that he knew to be based on mistaken identity, in an effort to deprive Miss Johnson of her liberty or property, it might be a very different case (though *Smith v. Gonzales, supra*, 670 F.2d at 526–27, suggests not). But that is not the allegation. The allegation is that the officers—Sutcliff perhaps carelessly—failed to notice that the description in the warrant did not match the appearance of Miss Johnson. This is not enough to bring section 1983 into play.

Other provisions of the Constitution are referred to in the complaint besides the Fourth Amendment. (In fact the Fourth Amendment is not mentioned specifically, but we take it to be implicitly invoked by the reference to the Fourteenth Amendment.) One is the Tenth Amendment—a reservation of powers to the states. The others are equally *malapropos.*

The judgment dismissing the complaint is

AFFIRMED.